# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

ROSANNE LYNN WATERS,

　　　　　　Debtor.

Case No. A10-00388-DMD
Chapter 13

> **Filed On**
> **3/15/11**

## MEMORANDUM ON DEUTSCHE BANK'S MOTION FOR RELIEF FROM STAY AND THE DEBTOR'S OBJECTION TO DEUTSCHE BANK'S PROOF OF CLAIM NO. 3

Deutsche Bank moves for relief from stay to foreclose a deed of trust encumbering the debtor's residence. The debtor opposes the bank's motion and also objects to Claim No. 3 filed by Deutsche Bank. The determinative issue is whether Deutsche Bank has established its standing as a creditor and party in interest in this case. For the reasons stated below, I find that it has. Accordingly, Deutsche Bank will be granted relief from stay. Further, the debtor's objection to the bank's Claim No. 3 will be overruled.

However, I also find that Deutsche Bank's motion for relief from stay was filed prematurely. None of the supporting documentation it submitted with its motion, its proof of claim, or its opposition to the debtor's objection to its claim, established that it was a party in interest in this case. It was not until Deutsche Bank produced the original note, three months after its motion for relief from stay was filed, that it established its standing as a creditor. Accordingly, this court will summarily deny, without prejudice, any future motion for relief from stay brought by either Deutsche Bank or its attorneys, Pite Duncan, on behalf of Deutsche Bank or other creditors, which fails to establish, on its face, the movant's standing as a party in interest.

Background

On September 14, 2006, the debtor borrowed $288,000.00 from Cherry Creek Mortgage Company, Inc.  The obligation was evidenced by a promissory note and secured by a deed of trust on the debtor's home in Anchorage.  The deed of trust was recorded in the Anchorage Recording District on September 19, 2006.[1]  It identifies the debtor and her spouse as "Borrower" and Cherry Creek Mortgage as "Lender."  Mortgage Electronic Registration Systems, Inc., or "MERS," was also named in the deed of trust, as a "nominee" for the Lender and the beneficiary under the deed of trust.

On February 4, 2010, a non-judicial foreclosure of the deed of trust was initiated.[2]  The notice of default and sale indicated that Deutsche Bank, rather than Cherry Creek Mortgage, was the beneficiary under the deed of trust.  When this notice was recorded, an assignment of deed of trust in favor of Deutsche Bank was not yet of record.

The foreclosure sale was scheduled for May 13, 2010.[3]  The debtor filed a chapter 13 petition two days before the foreclosure sale, on May 11, 2010.  On her Schedule D, she listed Cherry Creek Mortgage as the holder of the deed of trust, with a secured claim for $254,000.00.[4]  She also listed Cal-Western Reconveyance Corporation, "Deutsche Bank Trust, c/o Cal West Recon," and GMAC Mortgage as entities somehow

---

[1] Deutsche Bank's Request for Judicial Notice, filed Jan. 6, 2011 (Docket No. 42), Ex. A.

[2] Debtor's Obj. to Claim No. 3, filed Jul. 17, 2010 (Docket No. 21), Ex. A at 1.

[3] *Id.*, Ex. A at 2.

[4] Sched. D - Creditors Holding Secured Claims, filed May 11, 2010 (Docket No. 1 at 13).

2

connected to the mortgage, but for notice purposes only.  As to all four institutions, the debtor indicates that the obligation is disputed.  With regard to Deutsche Bank, she also indicates that the debt is contingent and unliquidated.

On May 24, 2010, attorney Josephine Piranio filed an entry of appearance in this case on behalf of GMAC Mortgage, LLC.  On June 9, 2010, Piranio filed Proof of Claim No. 3.  The claim identifies "Deutsche Bank Trust Company Americas as Trustee for RALI 2007QS4" as the creditor, but indicates that notices and payments are to be sent to GMAC Mortgage, LLC.  The claim is a secured claim, based on the mortgage loan the debtor took out in 2006 from Cherry Creek Mortgage.  On July 12, 2010, Piranio filed an objection to confirmation of the debtor's chapter 13 plan on behalf of Deutsche Bank.  The debtor filed an objection to the bank's claim five days later, on July 17, 2010.  She contended the bank lacked standing to file a claim or object to her plan, and asked Deutsche Bank to produce the original note.

Deutsche Bank subsequently filed a motion for relief from stay.  The debtor objected to this motion, again based on lack of standing.  The United States Trustee also objected to the bank's motion.  A consolidated hearing on the debtor's objection to the bank's claim, and the bank's motion for relief from stay, was held on January 11, 2011.  The matter is now ripe for ruling.

3

I.      The Evolution of Deutsche Bank's Claim and Motion for Relief From Stay:

    A.      Deutsche Bank's Claim No. 3

        Deutsche Bank filed Claim No. 3 on June 9, 2010.  The claim identifies "Deutsche Bank Trust Company Americas as Trustee for RALI 2007QS4," as the creditor, but indicates that payments and notices should be sent to GMAC Mortgage, LLC.  Attached to the claim are copies of a note, deed of trust, and assignment of deed of trust.

        The note consists of four pages.[5]  The first three pages are numbered at the bottom, e.g., "Page 1 of 3," etc.  The debtor's signature appears on the third page, and the date of September 14, 2006, is written next to it.  Beneath the debtor's signature, and side by side, are two rubber-stamp endorsements.  Neither one bears a date.  They both are signed by "D. Chiodo."  They appear as follows:

<table>
<tr>
<td align="center">PAY TO THE ORDER OF<br>GMAC MORTGAGE, LLC f/k/a<br>GMAC MORTGAGE CORPORATION<br>WITHOUT RECOURSE<br><br><u>   D. Chiodo   </u><br>D. Chiodo<br>LIMITED SIGNING OFFICER<br>GMAC BANK</td>
<td align="center">PAY TO THE ORDER OF<br><br><br>WITHOUT RECOURSE<br><br><u>   D. Chiodo   </u><br>D. Chiodo<br>LIMITED SIGNING OFFICER<br>GMAC MORTGAGE, LLC f/k/a<br>GMAC MORTGAGE CORPORATION</td>
</tr>
</table>

        The final page of the note is unnumbered and is blank except for an undated, stamped endorsement, without recourse, from Cherry Creek Mortgage to GMAC Bank.  The signature line indicates that "Christine A. Rychlec, Investor Loan Sales Manager" executed

---

[5] Deutsche Bank's Claim No. 3, filed Jun. 9, 2010, at 3 - 6.

the endorsement for Cherry Creek Mortgage.[6]  There is nothing on the final page to connect it to the note itself, nor is there anything on the note which references Deutsche Bank.

The deed of trust bears recording information which shows that it was recorded in the Anchorage Recording District on September 19, 2006.  The debtor and her husband are identified as the borrowers under the deed of trust, and Cherry Creek Mortgage is the lender.  MERS is also named in the deed of trust.  It is described as a "separate corporation that is acting solely as a nominee for the Lender and Lenders successors and assigns," and as both the "mortgagee" and the "beneficiary" under the deed of trust.[7]  Its capacity as a beneficiary, however, is "solely as nominee for Lender and Lender's successors and assigns" and "the successors and assigns of MERS."[8]  It is the "Lender," rather than MERS, that retains the right to repayment of the loan and the performance of obligations under the deed of trust.[9]

The assignment of deed of trust states that MERS, solely as nominee for Cherry Creek Mortgage, has transferred all of Cherry Creek Mortgage's interest in the deed of trust to Deutsche Bank.  The assignment was executed Janine Yamoah, Assistant Secretary for MERS, on June 1, 2010.[10]  This date is roughly three weeks after the debtor's petition was

---

[6] The signature consists simply of the letter "C."

[7] Claim No. 3 at 7.

[8] *Id.* at 8.

[9] *Id.*

[10] *Id.* at 21.

5

filed and more than three months after the commencement of the non-judicial foreclosure in February of 2010.

The debtor objected to Deutsche Bank's claim on the grounds that it did not have standing to file a claim or object to her chapter 13 plan. She said the note appeared to be a bearer instrument under AS 45.03.205(b), negotiable only by transfer of possession, and that it was unclear whether the bank or some other entity currently held the note. She asked the bank to produce the original note, with admissible evidence of who held it and how that person came into its possession. She also questioned the undated endorsements on the note. Did "D. Chiodo" have authority to endorse the note on behalf of both GMAC Bank and GMAC Mortgage? Also, was the endorsement from Cherry Creek Mortgage on the back of the third page of the note, or on a separate page? If a separate page, was it affixed to the note, as required by AS 45.03.204? Which endorsement came first? The debtor also questioned the effectiveness of the post-petition assignment of the deed of trust, and whether MERS, as nominee for Cherry Creek Mortgage, had the capacity to assign the deed of trust if Cherry Creek had already endorsed its interest in the note to another party.

The debtor included a request for production with her objection to Deutsche Bank's claim. She asked the bank to produce the original note. She also asked for the production of documents which established: 1) that D. Chiodo had the authority to execute the two endorsements on the third page of the note and when those endorsements were made; 2) that Christine Rychlec had the authority to endorse the note on behalf of Cherry Creek Mortgage; and 3) Janine Yamoah's authority to assign the deed of trust, along with the

6

written instructions which directed her to execute the assignment. Finally, since Deutsche Bank identified itself as the trustee for RALI 2007QS4, a mortgage backed securitized trust, the debtor asked the bank to produce the RALI 2007QS4 Pooling and Service Agreement, because this "PSA," which created the trust, would contain instructions regarding the transfer of mortgages into the trust and identify the individual loans that had been placed into the trust.

B.    Deutsche Bank's Opposition to the Debtor's Objection to Claim, and Deutsche Bank's Motion for Relief From Stay

Deutsche Bank filed an opposition to the debtor's claim objection on September 8, 2010 ("the opposition"). In its opposition, Deutsche Bank argued that its standing was established because: 1) it had shown that it qualified as the note holder under AS 45.03.301; 2) the beneficial interest in the deed of trust followed the note; and 3) the note and deed of trust had been properly authenticated, so it did not need to present the original note. The bank attached copies of the note, deed of trust, and assignment of deed of trust to its opposition. These exhibits were essentially identical to the copies the bank had included with its proof of claim, except that the assignment of deed of trust now contained recording information which reflected that it had been recorded in the Anchorage Recording District on July 19, 2010.[11] In addition to these documents, the bank included two new exhibits. The first was an assignment and assumption agreement, and the second was an excerpt from a

---

[11] Deutsche Bank's Opp'n to Debtor's Obj. to Claim, filed Sept. 8, 2010 (Docket No. 25), Ex. F.

schedule of mortgage loans.  The bank also asked the court to take judicial notice of a

document that could be found on the Securities and Exchange Commission's electronic

database.

To authenticate its exhibits, Deutsche Bank filed the declaration of Sharyn

Fleischer.  Fleischer states that she is employed as a bankruptcy specialist by GMAC

Mortgage, LLC ("GMACM").[12]  She says GMACM is the authorized servicing agent for

Deutsche Bank, and that Deutsche Bank is the trustee for the RALI Series 2007-QS4 Trust

("the Trust").  Fleisher says she has personal knowledge of the loans and extensions of credit

given to the debtor.  She further states she has "knowledge and/or access to" GMACM's

business records regarding the subject note and deed of trust, that she personally reviewed

these records before signing her declaration, and that the copy of a promissory note Deutsche

Bank has attached to its opposition is a true and correct copy of the original note which the

debtor signed in 2006.[13]

Fleischer describes the chain of title for the note as follows: first, Cherry Creek

specially endorsed the note to GMAC Bank and transferred possession of the note to GMAC

Bank; second, GMAC Bank specially endorsed the note to GMACM, and transferred

possession of the note to that entity; third, GMACM endorsed the note in blank, converting

the note to a bearer instrument, and transferred possession of the note to Wells Fargo Bank,

N.A., the duly appointed custodian for the Trust.  Fleischer states that D. Chiodo, who

---

[12] Fleischer Decl. in Supp. of Opp'n. to Obj. to Claim, filed Sept. 8, 2010 (Docket No. 26), at 1.

[13] *Id.* at 2.

executed the two endorsements on page 3 of the note, was an employee of both Ally Bank, f/k/a GMAC Bank, and GMACM, and was duty authorized to endorse the notes on behalf of these two entities. Fleischer does not say when any of these endorsements were made, however. To support her statements regarding the chain of title, she refers solely to the copy of the note. She also states that the endorsement from Cherry Creek Mortgage to GMAC Bank appears on the back of page 3 of the note.

To explain how Deutsche Bank ended up with the note after GMACM had endorsed it in blank, Fleisher further explains that "Residential Funding Company, LLC ("RFC") acquired all right, title and interest in the Subject Loan."[14] She doesn't say when, how, or from whom RFC acquired this interest. Nor does she reference any of GMACM's business records to support this statement. Fleischer goes on to say that RFC, on or about March 29, 2007, entered into an assignment and assumption agreement with Residential Accredit Loans, Inc. ("RALI"), whereby it transferred its interest in various mortgage loans, including the debtor's, to RALI. To support this statement, Fleischer references the copy of the assignment and assumption agreement attached to Deutsche Bank's opposition. The recitals on the first page of this agreement state that RFC has contracted with various seller/servicers under which such seller/servicers will sell it mortgage loans, and that RALI, as "the Company," wishes to purchase certain of the mortgage loans.[15] The document further states:

---

[14] *Id.*, at 3.

[15] Deutsche Bank's Opp'n (Docket No. 25), Ex. C.

9

C. The Company, RFC, as master servicer, and Deutsche Bank Trust Company Americas, as trustee (the "Trustee"), are entering into a Series Supplement, dated as of March 1, 2007 (the "Series Supplement"), and the Standard Terms of Pooling and Servicing Agreement, dated as of December 1, 2006 (collectively, the "Pooling and Servicing Agreement"), pursuant to which the Company proposes to issue Mortgage Asset-Backed Pass-Through Certificates, Series 2007-QS4 (the "Certificates") consisting of thirty-six classes . . . . . representing beneficial ownership interests in a trust fund consisting primarily of a pool of mortgage loans identified in Exhibit One to the Series Supplement (the "Mortgage Loans").[16]

Deutsche Bank does not provide copies of the March 1, 2007 Series Supplement or the December 1, 2006 Pooling and Servicing Agreement ("PSA") which are referenced in this paragraph. As noted above, the debtor asked Deutsche Bank to produce the PSA when she filed her objection to the bank's claim. Fleischer does indicate, however, that both the series supplement and the PSA can be found on the Securities and Exchange Commission's electronic database, and provides a URL link to access this document.

Deutsche Bank also provides a copy of a document which Fleischer identifies as "excerpts from the Mortgage Loan Schedule to the PSA." This document is from the SEC's electronic database as well. The upper right corner of the first page of this document says "Page 1 of 1076."[17] The document is untitled and undated. The first page contains

---

[16] *Id.*, Ex. C at 1.

[17] *Id.*, Ex. D at 1.

10

column headers which include: Loan Number, Original Balance, Loan Features, City, State, Zip, Servicer Loan #, Seller Loan # and Investor Loan #.[18]  One page of the excerpt contains the following information, which the bank has highlighted:

| ANCHORAGE | AK 99508 | 5 | 09/14/06 | 00 |
| *****5926 | | 05 | 11/01/06 | 0.0000 |
| *****5926 | | 0 | 10/01/21[19] | |

According to Fleischer, this information refers to the debtor's mortgage, "identified as loan number *****5926."[20]  However, the debtor has listed a different account number on her Schedule D, ending in 01170, and the copies of the note, deed of trust and assignment of deed of trust provided by the bank bear this account number as well.

With regard to the assignment of deed of trust, Fleischer says Ms. Yamoah, who executed the assignment, is an employee of GMACM as well as a certifying officer for MERS.  Fleischer says Yamoah was duly authorized to execute the assignment of deed of trust "on MERS' behalf."[21]

Deutsche Bank filed its motion for relief from stay on September 17, 2010.  Its motion included the same exhibits it had attached to its opposition.  The debtor objected to the bank's motion, again arguing that it had not established its standing to bring the motion. The debtor noted that bank still hadn't produced the original note and submitted that the Fleischer declaration was insufficient to establish the authenticity of the copy which the bank

---

[18] *Id.*

[19] Deutsche Bank's Opp'n (Docket No. 25), Ex. D at Page 881 of 1076.

[20] Fleischer Dec. (Docket No. 26), at 4.

[21] Fleischer Dec. (Docket No. 26), at 5.

had provided.  How would Fleischer, who reviewed the business records of her employer, GMACM, know if the original note was still in Wells Fargo's possession?   More importantly, how could she know that the endorsement from Cherry Creek Mortgage was, in fact, on the back of the third page of the note?  This point was critical to the entire chain of title, because without the first endorsement from Cherry Creek Mortgage to GMAC Bank, the remaining two endorsements would be meaningless.   To be effective, under AS 45.03.204, the endorsement had to be on the note or affixed to the note.  But Fleischer did not say she had examined the original note which, by her own account, was in the possession of Wells Fargo.

A preliminary hearing on Deutsche Bank's motion for relief from stay was held on October 13, 2010.  At that hearing, the bank's counsel argued that all of the debtor's objections to standing had been addressed.  The debtor's counsel disagreed.  He stated that the bank should be required to produce the note.  There was no evidence that Fleischer had reviewed the original note and there was no way to verify that the endorsement by Cherry Creek Mortgage was on the back of page 3 unless the original was made available.  The debtor's counsel also asked that Fleisher be made available for cross examination.  The court directed the bank's counsel to make Ms. Fleischer available for the final hearing.  This was scheduled for November 10, 2010, to be heard concurrently with the debtor's objection to the bank's claim.  The court asked the bank's counsel to verify that this date would work for Fleischer and indicated that it would reschedule the hearing if Fleischer was not available on that date.

12

The November 10 hearing was continued by stipulation of the parties to January 11, 2011. On January 6, 2011, Deutsche Bank filed a reply to the debtor's opposition to the relief from stay motion. It reiterated its prior arguments as to standing, and indicated that it would ask the court to take judicial notice of the documents it had previously produced or referenced in its opposition and motion for relief from stay. It also argued that the debtor had the burden of proof, under 11 U.S.C. § 362(g)(2), on the issue of Deutsche Bank's standing. Finally, the bank indicated that it had agreed to permit the debtor or her agent to inspect the original note, and that this inspection would be done before the January 11th hearing.

### C.    The Note Produced at Ms. Prianio's Office

On January 7, 2011, the original note was produced for inspection at the San Diego, California, office of the bank's attorneys.[22]  Because the debtor could not afford to have her attorney travel to San Diego to review the note, arrangements were made for a representative from the San Diego Office of the United States Trustee to inspect the note on her behalf.  On January 10, 2011, Piranio filed a supplemental declaration which stated that she had received the original, "blue-ink" promissory note from GMACM, and that a copy of the original note was attached as Exhibit A.  This copy of the note ("the original") differed from the one that Deutsche Bank had previously attached to its Claim No. 3, its opposition and its motion for relief from stay.  The original was not a bearer instrument.  On the third

---

[22] UST's Obj. to Deutsche Bank's Mot. for Relief From Stay, filed Jan. 10, 2011 (Docket No. 46), at 3.

page, the blank endorsement from GMACM was now a special endorsement in favor of Residential Funding Company, LLC, and below that endorsement, a third one now appeared which conveyed RFC's interest to Deutsche Bank. The endorsements on the original are shown as follows:

PAY TO THE ORDER OF
GMAC MORTGAGE, LLC f/k/a
GMAC MORTGAGE CORPORATION
WITHOUT RECOURSE

_____*D. Chiodo*_____
D. Chiodo
LIMITED SIGNING OFFICER
GMAC BANK

PAY TO THE ORDER OF
RESIDENTIAL FUNDING COMPANY, LLC
WITHOUT RECOURSE

_____*D. Chiodo*_____
D. Chiodo
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC f/k/a
GMAC MORTGAGE CORPORATION

PAY TO THE ORDER OF
Deutsche Bank Trust Company Americas as TrusteE
WITHOUT RECOURSE
Residential Funding Company, LLC
BY *Judy Faber*
Judy Faber, Vice President

Piranio included a copy of the FedEx shipping label with the copy of the original. The label reflects that the original came from Kristine Lofrese at a Fort Washington, Pennsylvania, address for GMAC Residential. It did not come from Wells Fargo (who Fleischer said had possession of the original), or from GMACM.

The debtor filed a supplemental objection to Deutsche Bank's relief from stay motion on January 10, 2011. She contended that it still wasn't clear how the bank came into possession of the note, because the authority of the individuals who executed the endorsement on the note hadn't yet been established. She also argued that the assignment of the deed of trust was not effective because Cherry Creek Mortgage no longer held an interest in the note when MERS executed the assignment on its behalf. Finally, the debtor questioned whether Deutsche Bank misrepresented its interest in the mortgage obligation

14

when it filed its proof of claim and its motion for relief from stay. She said these issues

should not become irrelevant because the note now appears to have been specially endorsed

and transferred to Deutsche Bank.

The United States Trustee ("UST") also filed an objection to the bank's relief

from stay motion. The UST observed that the original differed considerably from the copy

of the note the bank had previously produced. The UST also noted that there had been

several other instances where Deutsche Bank or other mortgage lenders had brought relief

from stay motions supported by incomplete or insufficient evidence to establish their

standing. In fact, in one case a court found that Deutsche Bank had created an allonge after

the motion for relief from stay had been filed, to conform the evidence to what had been

represented in the motion.[23] In the instant case, given the inconsistencies between the

original and the copy of the note, the UST argued that the court should require Deutsche

Bank to prove every transaction in the chain of title it had asserted, including the authority

of the individuals who executed the endorsements.

## II.   Deutsche Bank's Exhibits and Request for Judicial Notice

Prior to the January 11th hearing, Deutsche Bank filed a request for judicial

notice. The request asked the court to take judicial notice of the deed of trust, the assignment

and assumption agreement, the excerpts from the mortgage loan schedule, and the assignment

of deed of trust. Copies of these documents were attached to the bank's request, and they

conformed to the exhibits the bank had attached to its opposition and motion for relief from

---

[23] UST's Obj. to Deutsche Bank's Mot. for Relief From Stay (Docket No. 46), at 6, *citing In re Tarantola*, 2010 WL 3022038 (Bankr. D. Ariz. July 29, 2010).

stay.  Deutsche Bank also asked that the court take judicial notice of the series supplement and PSA.  As previously noted, the bank did not provide copies of these last two documents, but instead specified a URL link to access them from the SEC's electronic database.  Finally, the bank asked the court to take judicial notice of the PACER docket for this bankruptcy case.

The debtor objected to the bank's request.  After some discussion at the January 11 hearing, the deed of trust and assignment of deed of trust were admitted into evidence.  The assignment was admitted for the limited purpose of establishing that it had been prepared and recorded; the validity of the document was not conceded by the debtor's counsel.  The bank withdrew its request that the court take judicial notice of the PACER docket.[24]  The court took the bank's request as to the remaining three documents under advisement.

The assignment and assumption agreement, the excerpts from the mortgage loan schedule, and the series supplement and PSA are all documents from the SEC's electronic database.  Deutsche Bank submits they are admissible under Fed. R. Evid. 201(b), which permits a court to take judicial notice of facts which are "not subject to reasonable dispute in that [they are] either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[25]  The bank asks the court to take judicial notice of the SEC records because these documents are a matter of public record.  The three cases Deutsche Bank cites in support of this argument do not deal with records from the SEC's

---

[24] The bank's purpose for requesting judicial notice of the docket was unclear.

[25] Fed. R. Evid. 201(b).

database.[26]  However, courts frequently do take judicial notice of such records.[27]  Even so, these documents are considered "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents."[28]  As the Ninth Circuit has observed, a court may only take judicial notice of *undisputed* matters of public record, and cannot take judicial notice of disputed facts stated in public records.[29]

The ultimate fact Deutsche Bank seeks to establish – that is the holder of the note – cannot be determined by taking judicial notice of the SEC documents offered here. It is appropriate to take judicial notice of the undisputed facts found in these documents, e.g., that Deutsche Bank is the trustee for "RALI 2007 QS4", as is indicated on the bank's proof of claim, and that this trust was established in 2007 and consists of a pool of mortgage loans.[30]  But whether the debtor's mortgage loan was included in this transaction is a disputed fact, and the SEC documents cannot establish this point.  First, the Fleischer declaration and the excerpt from the schedule of mortgage loans offered by the bank are simply inadequate to make this finding.  While the excerpt does contain some information that matches the debtor's loan, such as city and zip code, there is nothing that definitively ties the information

---

[26] Deutsche Bank cites *Hefner v. Chao*, 2009 WL 2485754, *1 (S.D. Cal. 2009); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

[27] *See, e.g., Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008); *Dreiling v. Amer. Express Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

[28] *Lovelace*, 78 F.3d at 1018.

[29] *Lee v. City of Los Angeles*, 250 F.3d at 690 (emphasis in original).

[30] *See, e.g., Royalty Network Inc. v. Dishant.com, LLC*, 638 F.Supp.2d 410, 421 (S.D.N.Y. 2009) (court took judicial notice of the location of various companies' principal places of business, as shown on their SEC filings).

on the excerpt to the debtor.[31]   Her name is not included in the listing the bank has
highlighted.  Further, the loan number shown on the excerpt, which Fleisher says is the
debtor's mortgage loan, is different from the account number the debtor has listed on her
Schedule D.  The debtor lists an account number ending in 01170, and the copies of the note,
deed of trust and assignment of deed of trust provided by the bank bear this account number
as well.  But, ultimately, the reason the court cannot use the excerpt for the purpose offered
by the bank is that it would require the court to use this public record to establish a disputed
fact.  The SEC documents cannot be used for this purpose.[32]

At the January 11 hearing, Deutsche Bank also asked that the copy of the
original which it had submitted with Piranio's supplemental declaration be admitted into
evidence.  Piranio argued that this was a self authenticating document, given that she had
made the original note available to all parties on January 7th.  The debtor's attorney said he
would stipulate that his client had signed the original, but preserved his objections regarding
the validity of the endorsements.  The admission of the original was also taken under
advisement.

Piranio's supplemental declaration states that the original is a true and correct
copy of the "original, blue-ink promissory note" executed by the debtor.  While both the
debtor and the UST argue that the bank still must establish the chain of title and the

---

[31] *See U.S. Nat'l Bank Assn. v. Ibanez*, 941 N.E.2d 40, 52 (Mass. 2011).

[32] *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354-55 (7th Cir. 1995) (Where the
number of defendant's employees was a disputed fact, Second Circuit upheld lower court's refusal to take
judicial notice of Datacomm's 10-K form, filed with the SEC, to find that the corporation had more than 200
employees, even though the 10-K form indicated that Datacomm had 398 employees).

authenticity of each endorsement on the note, neither one contends the original is not an accurate copy of the blue-ink note. The original will be admitted into evidence.

III.    Standard for Relief From Stay and Burden of Proof on Issue of Standing

Stay litigation is limited in scope and hearings on relief from stay are generally handled in a summary fashion.[33]  However, relief from stay is granted to "a party in interest."[34]  Accordingly, while the validity of the underlying claim is not litigated in the relief from stay context,[35] the movant must establish its standing by showing that it has a "colorable claim"[36]  A colorable claim is one that "is legitimate and that may reasonably be asserted given the facts presented and the current law (or a reasonable and logical extension or modification of the current law)."[37]

Deutsche Bank argues that 11 U.S.C. § 362(g)(2) places the burden on the debtor to establish that the bank does not have standing to seek relief from stay. This contention is wholly without merit. Whether a party has standing to seek relief, as a party

---

[33] *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 740 (9th Cir. 1985).

[34] 11 U.S.C. § 362(d).  Further, under Fed. R. Civ. P. 4001(a)(1), motions for relief from stay are contested matters governed by Fed. R. Bankr. P. 9014.  Fed. R. Civ. P. 17, made applicable to contested matters pursuant to Fed. R. Bankr. P. 7017 and 9014, requires that such motions be brought by the real party in interest.

[35] *First Fed'l Bank of Calif. v. Robbins (In re Robbins)*, 310 B.R. 626, 631 (B.A.P. 9th Cir. 2004).

[36] *Robbins*, 310 B.R. at 631; *In re Weisband*, 427 B.R. 13, 18 (Bankr. D. Ariz. 2010).

[37] *In re Tarantola*, 2010 WL 3022038 at *3 (Bankr. D. Ariz. 2010), *citing Black's Law Dictionary* 264 (8th Ed. 2004).

in interest, is an issue distinct from whether the underlying claim is valid. Deutsche Bank
bears the burden of proof on the issue of its standing.[38]

## IV.    Deutsche Bank is a Holder Under Alaska Law

Deutsche Bank contends it has established its standing as a party in interest
entitled to seek relief from stay because it has shown that it is the note holder under Alaska
law. Under the Alaska Uniform Commercial Code, a "holder" is a person "in possession of
a negotiable instrument that is payable either to bearer or to an identified person who is the
person in possession."[39] The holder of an instrument is entitled to enforce it.[40] Or, the holder
may endorse and transfer the note to another person. To be effective, an endorsement must
either be "made on [the] instrument" or appear on "a paper affixed to the instrument,"[41] e.g.,
an allonge. When a holder of a note endorses it in blank, the note "becomes payable to the
bearer and may be negotiated by transfer of possession alone until specially endorsed."[42] A
special endorsement "is made by the holder of an instrument, whether payable to an
identified person or payable to bearer," which "identifies a person to whom it makes the
instrument payable."[43]

---

[38] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Hasso v. Mozsgai (In re La Sierra Fin. Serv., Inc.)*, 290 B.R. 718, 726 (B.A.P. 9th Cir. 2002), *citing Bennett v. Spear*, 520 U.S. 154, 168-68 (1997); *In re Aniel*, 427 B.R. 811, 816 (Bankr. N.D. Cal. 2010); *In re Weisband*, 427 B.R. at 18, *citing In re Wilhelm*, 407 B.R. 392, 400 (Bankr. D. Idaho 2009).

[39] AS 45.01.211(b)(23)(A).

[40] AS 45.03.301.

[41] AS 45.03.204(a).

[42] AS 45.03.205(b).

[43] AS 45.03.205(a).

Deutsche Bank initially argued that it was a holder because it had possession of the original note, endorsed in blank.  Given this assertion, resolving the issue of Deutsche Bank's standing should have been relatively straightforward.  However, the documentary evidence Deutsche Bank submitted at the outset in support of its claim and its motion for relief from stay failed to establish its standing.  It was impossible to tell if the critical, first endorsement from the original lender was actually part of the note.[44]  Further, while the first copy of the note appeared to be a bearer instrument, it was not clear if Deutsche Bank had possession of the original note.

The debtor raised these issues at the outset and asked Deutsche Bank to produce the original note.  Instead, the bank provided an inadequate supporting declaration to establish the location of the critical endorsement.  The declarant did not say she had examined the original note which, by her own admission, was in the possession of another entity, Wells Fargo.  The bank also failed to show that the debtor's mortgage note had been transferred into the RALI 2007 QS4 Trust.  Neither the endorsements on the note nor the SEC documents offered by the bank were sufficient to establish this point.  Deutsche Bank was reluctant to produce the original note and, when the original was ultimately made available, the endorsements on that document differed significantly from the ones shown on the copy the bank had submitted earlier.  These factors all contributed to the delay in resolving the issue of Deutsche's Bank's standing.

---

[44] This appears to be a recurring issue.  *See In re Shapoval*, 441 B.R. 392 (Bankr. D. Mass. 2010) (evidentiary hearing was ordered where bank's standing to seek relief from stay hinged upon whether a purported allonge was attached to the note); *In re Weisband*, 427 B.R. at 19-20 (allonge ineffective because it had nothing to tie it to the note and there was no evidence that it was affixed to the note).

21

As of the January 11th hearing, Deutsche Bank had established that it had possession of the original note.  Further, when the original note was made available for inspection, it became clear that the critical, first endorsement was on the back of the third page of the note.  Accordingly, any issues regarding the adequacy of an allonge evaporated. Finally, the original note had a chain of endorsements ending in a special endorsement to Deutsche Bank.  Given the status of the record at the January 11th hearing, I find that Deutsche Bank is a holder of the debtor's mortgage note, under Alaska law.[45]  While the debtor and the trustee insist that the bank go further and document the validity of each endorsement, under the circumstances found here, I feel that this is not required for the purpose of determining whether to grant relief from stay.[46]

The debtor has also challenged the sufficiency of the assignment of the deed of trust, on several grounds.  Some courts have found that MERS, which serves merely as a nominee, cannot convey an interest in the mortgage note.[47]  However, Deutsche Bank did not pin its standing argument to the validity of the assignment.  Additionally, both parties have cited *Carpenter v. Longan*, 83 U.S. 271, 271 (1872) for the principle that the deed of trust follows the note.  Here, the deed of trust created a lien on the debtor's residence when it was recorded in 2006,[48] well before the petition was filed.  Accordingly, the mortgage was

---

[45] *See In re Hwang*, 438 B.R. 661, (C.D. Cal. 2010) (Bankruptcy Court overruled; Indy Mac had standing to seek relief from stay where it was in possession of note, specially endorsed in its favor.); *In re Samuels*, 415 B.R. 8, 20 (Bankr. D. Mass. 2009) (Deutsche Bank had standing to enforce payment because it had possession of the note, endorsed in blank).

[46] *See, e.g., Weisband*, 427 B.R. at 22-23.

[47] *Weisband*, 427 B.R. at 20, *Wilhelm*, 407 B.R. at 404-05; *In re Box*, 2010 WL 2228289 at *3-*4 (Bankr. W.D. Mo. Jun. 3, 2010).

[48] *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks*, 478 P.2d 829, 831-32 (Alaska 1970).

22

a secured claim when the bankruptcy was filed.  There is no requirement in the Alaska Statutes that an assignment of a deed of trust be recorded.[49]  The assignment does not impact Deutsche Bank's standing or the security of the deed of trust one way or the other.  Nor did the recording of the assignment somehow violate the automatic stay or give rise to an avoidance action by the bankruptcy trustee.  There is nothing to prohibit the transfer of a claim post-petition.[50]

The bank has established its standing as a party in interest.  It has possession of the debtor's mortgage note, which is specially endorsed in its favor.  Accordingly, Deutsche Bank's motion for relief from stay will be granted.  For the same reason, the debtor's objection to the bank's claim will be overruled.

Although the bank will receive relief from stay in this instance, I find that it filed its motion for stay relief prematurely.  As noted above, the delay in resolving the issue of standing here is attributable to the bank's failure to present competent documentary and declaratory evidence to establish two simple points – the location of the first endorsement (on the note or on an allonge), and the bank's possession of the note.  When challenged on these points, the bank could have easily resolved these issues by simply producing the note.  Alternatively, the bank could have submitted the declaration of an individual who had actually examined the original note to resolve the deficiencies in its evidence.  Neither alternative is onerous, and both are more straightforward than the bank's attempt to connect

---

[49] While AS 34.20.110 mandates that a deed of trust *shall* be recorded, AS 34.20.130(1) provides that an assignment *may* be recorded.

[50] *See* Fed. R. Bankr. P. 3001(e) - Transferred Claim.

23

the dots through a series of inconclusive and incomplete SEC documents.  Accordingly, this court will summarily deny, without prejudice, any future motion for relief from stay brought by either Deutsche Bank or its attorneys, Pite Duncan, on behalf of Deutsche Bank or another creditor, if the bank fails to establish its standing as a party in interest by the time of the preliminary hearing.

Conclusion

        For the foregoing reasons, Deutsche Bank's motion for relief from stay will be granted and the debtor's objection to Claim No. 3 will be overruled.  However, Deutsche Bank and its counsel, Pite Duncan, as counsel for Deutsche Bank or for any other mortgage lender, are cautioned that this court will summarily deny, without prejudice, any future motions for relief from stay brought in this district which fail to establish the movant's standing as a party in interest.

        DATED:  March 15, 2011

                                BY THE COURT

                                 /s/ Donald MacDonald IV
                                DONALD MacDONALD IV
                                United States Bankruptcy Judge

Serve:        E. LeRoy, Esq.
              J. Piranio, Esq.
              K. Hill, Esq.
              L. Compton, Trustee
              U. S. Trustee

              03/15/11

24